19 May 2000

No. 2--99--0187

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, ) 

) No. 97--CF--308

v. ) 

)

RAMON GONZALEZ,  ) Honorable 

  ) Thomas E. Callum,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE RAPP delivered the opinion of the court:

Following a stipulated bench trial, defendant, Ramon Gonzalez, was convicted of three "super-Class X" drug offenses, one of which involved several kilograms of cocaine.  The trial court sentenced defendant on the most serious offense to 15 years' imprisonment and imposed a substantial street-value fine.  Following denial of his posttrial motions, defendant timely appealed.  Defendant challenges the denial of two suppression motions and alleges that the State failed to prove him guilty beyond a reasonable doubt.  We affirm.

I. FACTS

On February 28, 1997, a three-count indictment was handed down against defendant.  Count I charged defendant with unlawful delivery of between 400 and 900 grams of cocaine (720 ILCS 570/401(a)(2)(C) (West 1996)); count II charged defendant with unlawful possession of more than 900 grams of cocaine with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 1996)); and count III charged defendant with unlawful possession of between 400 and 900 grams of cocaine with intent to deliver (720 ILCS 570/401(a)(2)(C) (West 1996)).

Defendant filed several suppression motions.  In the first motion, defendant sought to suppress the contents of eavesdrop recordings between him and a confidential informant during which drug transactions were discussed.  At a hearing on the motion, defendant argued that the application for the original eavesdrop authorization and an extension (applications) were defective because, 
inter alia
, (1) the alleged consenting party was identified in the applications by an alias; and (2) information upon which the applications were based was obtained through two "eavesdrops" conducted prior to approval of the original application.  The applications presented at the hearing identified the consenting party as "Mike Martinez (not his real name)."  The consent forms for both applications were signed by "Mike Martinez."  Testimony revealed that Mike Martinez was actually Carlos Moa, a confidential informant.  In essence, defendant argued that without the recordings the other evidence obtained against him was inadmissible as "fruit of the poisonous tree."  The trial court denied the motion, finding that identifying Moa by his alias amounted to, at most, a technical violation and was not an attempt to mislead and that some of the information upon which the applications were based was not obtained improperly.

In the second motion, defendant sought to suppress certain custodial statements made to the police prior to being given 
Miranda
 warnings or executing a 
Miranda
 waiver.  After hearing the evidence and arguments, the trial court granted the motion.

In the third motion, defendant sought to suppress certain physical evidence as "fruit of the poisonous tree" based on the 
Miranda
 violations.  The trial court denied the motion, concluding that the 
Miranda
 violation was simply a violation of a prophylactic rule and not a violation of a constitutional right.  The trial court further found that defendant's custodial statements were voluntary.

A stipulated bench trial was held on December 1, 1998, at which the following evidence was presented by the State.  Carlos Moa would testify that in December 1996 he was working as an informant for the Du Page Metropolitan Enforcement Group (DuMEG).  Moa was not a police officer.  Moa would testify that he knew defendant for at least a year prior to December 1996.  Moa purchased cocaine from defendant on a number of occasions.  The most cocaine Moa ever purchased from defendant at any one time was a half-kilogram.  Moa had been to defendant's residence at 255 East Oak, Apartment 8, Addison, Illinois, on at least two prior occasions.

Moa would further testify that on December 11, 1996, he arranged for defendant to meet him in the parking lot of a nearby McDonald's restaurant to sell a small quantity of cocaine to an acquaintance.  That acquaintance was actually Guy DiCastris, a DuMEG undercover narcotics agent.  At the arranged time, Moa observed defendant drive up in a black BMW.  Defendant got into Moa's car and discussed selling large quantities of cocaine to DiCastris in the future.  The arranged transaction was then completed.

On December 30, 1996, Moa again arranged for a small drug transaction.  This time the deal was to take place in the parking lot of a nearby Venture department store.  Moa was accompanied by DiCastris and another DuMEG narcotics agent, David Webb.  Moa would testify that defendant arrived in the same BMW he drove to the McDonald's meeting.  This time, Webb got into defendant's car while Moa and DiCastris stayed behind.  Moa did not hear or see what transpired between Webb and defendant.

Moa would also testify that a month later, on January 30, 1997, he met with defendant at a nearby Denny's restaurant.  There they discussed drug transactions at length, and defendant told Moa that his supplier was Miguel "Mike" Corral.

During the first week and a half of February 1997, Moa and defendant had several phone conversations concerning the sale of a half-kilogram of cocaine.  Moa would testify that on February 10, 1997, he met defendant in the parking lot of defendant's apartment building to discuss completing the sale the next day.  On February 11, 1997, Moa had a phone conversation with defendant during which they agreed on a price of $14,000.  Later that day, Moa met defendant in the parking lot of his condominium building.  Moa would testify that defendant indicated that he had the half-

kilogram and he wanted to see the money.  Moa responded that he wanted to see the cocaine.  Defendant took Moa to the black BMW and showed him what appeared to be a half-kilogram of cocaine in a box.  After observing the cocaine, Moa gave agents present at the scene a signal and defendant was arrested.

 If called to testify, Agent DiCastris would confirm the events that transpired in the McDonald's parking lot on December 11, 1996.  DiCastris would state that defendant drove up in a black BMW with the license plate number HSD 639.  DiCastris would confirm that defendant sold him a small amount of cocaine.  DiCastris would also confirm the events that transpired in the Venture parking lot on December 30, 1996.

Agent Webb would testify that he was in the McDonald's parking lot on December 11, 1996, but in a separate car.  Webb took custody of the suspected cocaine purchased by DiCastris.  Webb would also confirm the events that transpired at Venture on December 30, 1996.  Webb would testify that he had a conversation with defendant about buying cocaine.  Defendant then sold Webb a small amount of cocaine.  Finally, Webb would testify that he was at the scene when Moa and defendant met on February 11, 1997, but was not part of the deal.  Webb would confirm much of Moa's version of events.

A third DuMEG narcotics agent, Agent Dutkovich, would testify that he was also at the scene on February 11, 1997.  After defendant was taken into custody, Dutkovich searched the BMW and found the box containing the suspected cocaine.  Dutkovich also obtained written consent from defendant to search his residence.  During a search of the residence, Dutkovich found a duffel bag containing about two kilograms of suspected cocaine, a loaded semi-

automatic pistol, $23,500 cash, an Illinois Lotto ticket, and two identification cards with Miguel Corral's picture.

Flora Gonzalez, defendant's sister, would testify that she was at defendant's residence on February 11, 1997.  She would testify that the duffel bag recovered by the police was found in defendant's bedroom.

A latent fingerprint examiner, Paul Sahs, would testify that fingerprints were discovered on the Lotto ticket found in the duffel bag.  Sahs would testify that the fingerprints belonged to defendant.

Finally, a forensic chemist, Corina Campos, would testify that she analyzed the suspected cocaine recovered from the drug transactions and defendant's residence.  Campos would testify that the substance was indeed cocaine and that its total weight was in excess of 1,100 grams.  

The State offered the cocaine into evidence.  The trial court admitted the cocaine over the defense's objection that the cocaine was inadmissible based on the suppression motions.

Defendant's motion for a directed verdict was denied and the trial court found defendant guilty on all counts.  After denying defendant's posttrial motions, the trial court sentenced defendant as previously indicated.  This timely appeal followed.

II. DISCUSSION

Defendant first argues that his motion to suppress the eavesdrop recordings should have been granted because the State was statutorily required to reveal the "true identity" of the party consenting to the overhear, and its failure to do so invalidated the order authorizing the eavesdropping.  This argument is meritless.

Generally, when a trial court's ruling on a motion to suppress evidence turns on questions of fact, and where those facts are disputed on appeal, the ruling will not be disturbed unless it is manifestly erroneous.  
People v. Gonzalez
, 184 Ill. 2d 402, 411-12 (1998).  Where there are no disputed facts on appeal, the issue becomes a question of law subject to a 
de novo
 review.  
Gonzalez
, 184 Ill. 2d at 412.  Here, defendant does not dispute the facts upon which the trial court relied in denying the motion to suppress the eavesdrop recordings.  Instead, defendant argues that, given the facts of the case, the trial court's ruling failed to comply with the statute.  In other words, defendant makes a statutory construction argument.  Statutory construction is a question of law
.  
People v. Robinson
, 172 Ill. 2d 452, 457 (1996).

The rules of statutory construction are well known.  Under those rules, our main objective is to give effect to the intent of the legislature.  
Robinson
, 172 Ill. 2d at 457.  We ascertain legislative intent first by reviewing the language used in the statute, giving the language its plain and ordinary meaning.
  
Robinson
, 172 Ill. 2d at 457.  Absent ambiguity in the statutory language, we must apply the statute as written without resorting to other aids of statutory construction.  
Robinson
, 172 Ill. 2d at 457.

Section 108A--3(a) of the Code of Criminal Procedure of 1963 (Code) provides in relevant part:

"(a) Where one party to a conversation to occur in the future has consented to the use of an eavesdropping device to overhear or record the conversation, a judge may grant approval to an application to use an eavesdropping device pursuant to the provisions of this section.

Each application for an order authorizing or subsequently approving the use of an eavesdropping device shall be made in writing ***.  Each application shall include the following:

***

(2) *** (c) the 
identity of the party
 to the expected conversation consenting to the use of an eavesdropping device; ***."  (Emphasis added.)  725 ILCS 5/108A--3(a) (West 1996).

Defendant contends that the words "identity of the party" require an applicant for an eavesdrop authorization to reveal the true identity of the party consenting to the overhear, not merely the party's alias.  We reject this narrow interpretation.  

The plain and ordinary meaning of the language used in section 108A--3(a)(2)(c) convinces us that the legislature did not intend to "require the consenting party to be identified in any particular way."  
People v. Manuel
, 294 Ill. App. 3d 113, 122 (1997).  The statute does not state that the party's real name must be used.  Nor does the statute use words such as "true" or "actual" to modify the word "identity."  Moreover, an alias is an additional name by which a person is known or identified.  See Black's Law Dictionary 72 (7th ed. 1999).  In other words, an alias is simply one means of identifying a person.  We therefore hold that the use of an alias in an application for an eavesdrop authorization does not undermine the authorization's validity.  Our holding is supported by 
Manuel
, 294 Ill. App. 3d 113, and by the long-settled principle that the use of a fictitious name in an affidavit supporting a search warrant does not undermine the validity of the warrant (see 
People v. Stansberry
, 47 Ill. 2d 541, 545 (1971))
.

In 
Manuel
, the defendant argued that an authorization for an eavesdrop was invalid because the application identified the consenting party by his alias.  The court rejected this argument, noting:

"[T]he confidential informant, Chris Robinson, gave written consent to the overhear and recording of conversations he had with the defendant.  However, the section 108A--3 application stated that 'Larry Wayne (alias)' was the consenting party.  Also, the consent form Robinson signed identified Robinson as 'Larry Wayne (alias)' and that is how Robinson signed the form."  
Manuel
, 294 Ill. App. 3d at 121.

The court then held that an applicant's use of an alias is acceptable where the judge issuing the authorization is made aware that the consenting party's name is fictitious.  
Manuel
, 294 Ill. App. 3d at 122.  In so holding, the court found that there was no allegation that the informant did not exist, nor was there a doubt that he in fact existed because he testified at trial.  
Manuel
, 294 Ill. App. 3d at 122.  
Manuel
 is indistinguishable from our case.

Here, the first page of application for eavesdrop authorization indicated that the consenting party was "Mike Martinez (not his real name)."  This was sufficient to inform the trial court that a fictitious name was being used.  Mike Martinez was actually an alias for Carlos Moa, a confidential informant for DuMEG.  Moa signed the consent form as Mike Martinez.  There is no indication in the record that the police were attempting to mislead the trial court in any way.  Defendant did not allege in the trial court, nor does he allege on appeal, that the person known as Mike Martinez does not exist.  Such an argument would be, at best, disingenuous.  "Mike Martinez" is without a doubt Carlos Moa.  That was established both at the hearing on defendant's first suppression motion and through defendant's stipulation to Moa's testimony during the stipulated bench trial.  In the stipulation, Moa acknowledged that he indeed was a confidential informant for DuMEG.  Denial of defendant's first suppression motion was not erroneous based on the use of an alias in the application for eavesdrop authorization.

Defendant next contends that the order authorizing the eavesdrop recordings was invalid because it was based on two conversations between Moa and defendant that were overheard by DuMEG agents prior to obtaining the authorization.  At the hearing on defendant's first suppression motion, Agent Webb testified that on January 27 and 29, 1997, he and Agent DiCastris were present with Moa when Moa placed phone calls over his cellular phone to defendant.  Webb testified that he and DiCastris overheard the conversations by putting their ears to the phone.  The phone was not modified in any way and Moa consented to the officer's listening in on the conversations.  Based on these facts, defendant's contention lacks merit.  An unaltered telephone is not an eavesdropping device.  
People v. Shinkle
, 128 Ill. 2d 480, 488 (1989).  A police officer overhearing a conversation with the consent of one of the parties and without the aid of a listening device is not eavesdropping, regardless of whether the officer's intent was to surreptitiously overhear the conversation.  
Shinkle
, 128 Ill. 2d at 489.  Agents Webb and DiCastris did not improperly listen to the conversations between Moa and defendant.  Therefore, the use of the information obtained from listening to the conversations in the original application for an eavesdrop authorization did not render the later order invalid.  We determine that the trial court properly denied defendant's first suppression motion on this ground.

Defendant also argues that the trial court erroneously denied his third motion to suppress physical evidence as "fruit of the poisonous tree" based on the trial court's finding that the police failed to timely read defendant his 
Miranda
 rights.  As before, we review this contention 
de novo
 because there are no factual disputes on appeal.  
Gonzalez
, 184 Ill. 2d at 412.  According to defendant, the statements that were suppressed because of the 
Miranda
 violation were statements that led directly to the police discovering the cocaine in defendant's bedroom.  Specifically, defendant points to the fact that one of the suppressed statements was his address.  Therefore, defendant reasons that, because the statement regarding his address was suppressed, the police would never have discovered his address, never searched his residence, and never seized the cocaine from his bedroom.  This contention, like defendant's other contentions, is meritless.

The "fruit of the poisonous tree" doctrine only applies to situations in which evidence is obtained in violation of a constitutional right
.  
People v. Winsett
, 153 Ill. 2d 335, 353 (1992).  Evidence discovered by virtue of a statement obtained in violation of a constitutional right must be suppressed.  
Winsett
, 153 Ill. 2d at 353.  The "right" to receive 
Miranda
 warnings is not a constitutional right but, rather, is a prophylactic rule designed to protect a suspect's constitutional right against compelled self-

incrimination.  
Winsett
, 153 Ill. 2d at 353.  Because the 
Miranda
 rule is prophylactic, evidence discovered by virtue of a statement obtained in violation of 
Miranda
 is not automatically excludable under the "fruit of the poisonous tree" doctrine.  
Winsett
, 153 Ill. 2d at 359.  The statement must have been obtained unconstitutionally, 
i.e.
, involuntarily, in order for the "fruits" of the statement to be suppressed, and a 
Miranda
 violation is only one piece of the puzzle in determining voluntariness.  
Winsett
, 153 Ill. 2d at 364.

Here, after hearing evidence on defendant's second suppression motion, the trial court determined that there was a 
Miranda
 violation.  However, the trial court also found that the statements given to police were voluntary.  The trial court therefore suppressed the statements
 for use in the State's case in chief.  As a result of the trial court's ruling on the second suppression motion, defendant unsuccessfully sought suppression of the physical evidence obtained by virtue of the statements.  In denying the motion, the trial court noted the prophylactic nature of 
Miranda
 warnings and found that, because the statements were otherwise voluntary, the fruit of the statements, 
i.e.
, the cocaine seized from defendant's bedroom, was admissible.  The trial court also noted that defendant consented in writing to a search of his residence.  We agree with the trial court's analysis.  Defendant's third suppression motion was properly denied.

Defendant's final argument is that the State failed to prove him guilty beyond a reasonable doubt of unlawful possession of cocaine with intent to deliver.  The standard of review for a challenge to the sufficiency of evidence is one of great deference to the trier of fact; it is not our function to retry the defendant.  
People v. Smith
, 177 Ill. 2d 53, 73 (1997).  Though we have a duty to review the evidence and determine whether it shows guilt beyond a reasonable doubt (
People v. Shipp
, 52 Ill. App. 3d 470, 475 (1977)), we will not set aside a conviction unless the record reveals that the evidence, viewed most favorably toward the prosecution, is so unsatisfactory or improbable that there remains a reasonable doubt as to the defendant's guilt.  
Smith
, 177 Ill. 2d at 73.

Defendant attacks the sufficiency of the evidence with two alternative arguments.  First, defendant argues that, because the physical evidence found in defendant's bedroom should have been suppressed, the State had no evidence upon which to base a conviction.  We reject this contention because, as previously stated, the trial court properly denied suppression of the physical evidence.

Defendant argues in the alternative that the evidence failed to demonstrate his knowledge of the cocaine found in his bedroom and failed to demonstrate that he had sufficient control over the premises to establish constructive possession.  We disagree.

To sustain a conviction for unlawful possession of a controlled substance with intent to deliver, the State must prove knowledge of the presence of the substance, possession of the substance, and the intent to deliver the substance.  
People v. Robinson
, 167 Ill. 2d 397, 407 (1995).  Intent to deliver a controlled substance may be inferred from the amount of the substance possessed where the amount could not reasonably be viewed as designed for personal consumption.  
Robinson
, 167 Ill. 2d at 410-11.  Possession of a controlled substance may be either actual or constructive.  
People v. Clark
, 173 Ill. App. 3d 443, 449 (1988).  Actual possession exists when an individual exercises immediate and exclusive dominion or control over the substance.  
People v. Scott
, 152 Ill. App. 3d 868, 871 (1987).  Constructive possession exists when an individual has the intent and power to maintain immediate and exclusive dominion or control over the substance but is not doing so presently.  
People v. Frieberg
, 147 Ill. 2d 326, 361 (1992).  We find the evidence against defendant overwhelming.

Upon searching defendant's residence, officers found a duffel bag in defendant's bedroom containing a substantial quantity of cocaine, a pistol, two identification cards, and an Illinois Lotto ticket with defendant's fingerprints on it.  The fingerprint on the Lotto ticket and the fact that the duffel bag was found in defendant's bedroom are certainly sufficient to establish defendant's knowledge of the cocaine.  Those same facts also show that defendant had the intent and the ability to maintain immediate and exclusive dominion or control over the substance.  Defendant was arrested in the parking lot of his condominium building while selling a large quantity of cocaine to Moa.  Moreover, evidence was presented showing that defendant was a co-owner of the condominium where the drugs were recovered.  The evidence presented at the stipulated bench trial was more than sufficient to prove defendant guilty beyond a reasonable doubt of possession of cocaine with intent to deliver.

As a final matter, we wish to comment on the so-called "stipulated bench trial" procedure.  It is our belief that this archaic and often confusing legal anomaly should be discontinued in favor of the more understandable and concise "conditional guilty plea" with the attendant admonishments (see 134 Ill. 2d R. 402(a)).

A defendant desiring to appeal denial of a suppression motion makes a mistake in pleading guilty because a guilty plea waives all nonjurisdictional errors and defects.  
People v. Horton
, 143 Ill. 2d 11, 22 (1991).  Generally, in order to preserve pretrial objections for appeal, a defendant must go to trial even if the evidence in favor of conviction is overwhelming.  Enter the so-

called "stipulated bench trial."  

A stipulated bench trial is a legal fiction created solely to give defendants the benefit and convenience of a guilty plea while avoiding the consequences of waiver or forfeiture.  
Horton
, 143 Ill. 2d at 22.  In a stipulated bench trial, a defendant enters a plea of not guilty, and a "trial" is held based on a set of facts agreed to by the parties.  Although there is a remote theoretical possibility that the defendant may be acquitted, the reality is that factual guilt is a foregone conclusion.  After all, neither a reasonable defendant nor a prosecutor would choose to pursue a stipulated bench trial (or guilty plea) if the evidence is doubtful.  Thus, once a stipulated bench trial is conducted, the defendant will 
a fortiori
 be found guilty by the trial court.  But unlike the case of a guilty plea, the right to appeal any pretrial objections is preserved.  In other words, if the defendant's pretrial motion to suppress was denied and defense counsel believed the denial was erroneous, it would be improper and most probably patent incompetence for defense counsel to allow defendant to plead guilty, since review of the denial of the motion would be barred.

Stipulated bench trials are tricky creatures prone to mistakes by trial courts and attorneys alike.  Precise language must be used.  To properly preserve the denial of a pretrial motion for review, the stipulation must be only to the existence of the evidence.  
People v. Cunningham
, 286 Ill. App. 3d 346, 348-49 (1997).  If counsel stipulates that the evidence is sufficient to convict, then the stipulated bench trial mutates into a guilty plea and the suppression  issues are waived on appeal.  
Horton
, 143 Ill. 2d at 22.

Because of the intricacies involved, the use of stipulated bench trials has been roundly criticized for some time.  See, 
e.g.
, 
People v. Smith
, 59 Ill. 2d 236, 242 (1974); 
People v. Hart
, 144 Ill. App. 3d 103, 106 (1986); 
People v. Bonham
, 106 Ill. App. 3d 769, 773 (1982).  Yet, for some reason, neither our supreme court nor the legislature has acted to remedy this enigma.

A stipulated bench trial is, in reality, nothing more than a glorified guilty plea that wastes precious judicial resources and is likely to be misunderstood, particularly by the defendant.  There also is a risk that the wrong language will be used, thus making the stipulated bench trial tantamount to a guilty plea and foreclosing the very issue sought to be preserved by resorting to the stipulated bench trial.

We believe that there is a much better approach to preserving suppression issues in the face of strong evidence against a defendant.  This approach is known as the "conditional plea."  The federal rules of criminal procedure allow for conditional pleas with the consent of the government.  Fed. R. Crim. P. 11(a)(2).  A few states have enacted statutes that permit conditional guilty pleas by allowing express reservation of the right to appeal specific pretrial rulings.  See, 
e.g.
, 
Cal. Penal Code
 §§1237.5, 1538.5 (West 1998); Fla. Stat. Ann. §924.06(3) (West 1998); N.Y. Crim. Proc. Law §710.70(2) (McKinney 1998); Wis. Stat. Ann. §971.31(10) (West 1998).  These statutes typically provide that certain pretrial motions, such as suppression motions, are subject to review from an ensuing conviction notwithstanding the fact that the conviction arises from a guilty plea rather than a trial.  However, a defendant may not simply plead guilty in order to bypass the trial court on the issue in question.  Rather, existing procedures must still be met, such as the requirement of raising objections in a pretrial motion.  Thus, conditional pleas have distinct advantages over stipulated bench trials.

First, conditional pleas facilitate plea bargaining.  
People v. Thomas
, 53 N.Y.2d 338, 342, 424 N.E.2d 537, 539 (1981).  In the majority of cases, defendants recognize that unless they succeed in suppressing physical evidence or statements, the State will face little difficulty in proving its case.  Under these conditions, defendants may have no desire to press for a trial and instead may wish to plead guilty.  However, if defendants are confronted with being foreclosed from appealing the denial of a suppression motion because of the guilty plea, they will be forced to persist in their pleas of not guilty.  This forces a defendant to prolong the ultimate determination of guilt or innocence and to endure the risks of the intricacies of a stipulated bench trial.  Permitting conditional pleas would alleviate these undesirable ends and, at the same time, permit preservation of defendants' constitutional claims and alleviate the need for the unnecessary burdens being placed on trial courts.  Moreover, allowing conditional pleas would undoubtedly reduce claims of ineffective assistance of counsel that frequently arise in appeals from stipulated bench trials.  For these reasons we urge the legislature or our supreme court to consider instituting conditional pleas in this state.

III. CONCLUSION

For the foregoing reasons, defendant's conviction is affirmed.

Affirmed.

GEIGER and THOMAS, JJ., concur.