2022 IL App (2d) 200077
No. 2-20-0077
Order filed June 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-709 |
| JACQUELINE VILLARREAL, | ) ) | Honorable George J. Bakalis, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's stipulated bench trial was technically tantamount to a guilty plea, but that did not waive our ability to review the suppression issue; the trial court correctly denied defendant's motion to suppress, and defendant's conviction for possession of a fake driver's license was vacated as forgery is the more serious offense.

¶ 2   Defendant, Jacqueline Villarreal, was charged with identity theft (720 ILCS 5/16-30(a)(4) (West 2018)), possession of a fictitious or unlawfully altered driver's license (625 ILCS 5/6-301.1(b)(4) (West 2018)), forgery (720 ILCS 5/17-3(a)(3) (West 2018)), and unlawful possession of a theft detection device remover (*id.* § 16-6(b)(3)). Following a stipulated bench trial, she was

convicted of all charges. On appeal, defendant argues that the trial court erred in denying her motion to suppress evidence. She further argues that her convictions of identity theft, possession of a fictitious or unlawfully altered driver's license, and forgery violate the one-act, one-crime rule, and that only the most serious conviction may stand. We affirm in part and vacate in part.

¶ 3                                  I. BACKGROUND

¶ 4     At the hearing on defendant's motion to suppress, Woodridge police officer Robert McKimson testified that, at about 6 p.m. on March 30, 2018, he and his partner, Officer Krawczyk, were on patrol when they observed a Nissan van pull out of a gas station. The van had no front license plate and the front seat passenger was not wearing a seat belt. McKimson and Krawczyk conducted a traffic stop. The van's driver was male, another male was seated in the back seat, and defendant was seated in the front passenger seat. McKimson and Krawczyk approached the van. Krawczyk alerted McKimson that he smelled cannabis through the van's open window. The rear passenger handed Krawczyk two small bags of cannabis that were each about the size of a quarter. The officers then had the three occupants step out of the van, at which point the officers searched the van. When the driver stepped out of the van, McKimson smelled the odor of burnt cannabis coming from the driver's clothing and the inside of the van.

¶ 5     McKimson searched a purse that he found on the back seat of the van. He testified that the purse was empty except for a single ID card. The following exchange then occurred between defense counsel and McKimson:

"Q. So when you looked in the purse, all you saw was an ID card?

A. Correct.

Q. There was zero cannabis in that purse, I assume?

A. Yes.

Q. And so then you saw the ID in the purse, you took the ID out of the purse?

A. Correct.

Q. Is that fair to say? And when you took it out of the purse, you looked at the ID?

A. Yes.

Q. And when after you had gotten it out of the purse and you looked at the ID, you read the name and looked at the picture?

A. Upon immediately seeing it I knew it was a fake ID.

Q. Okay. Well, you took it out of the purse and you read it, right?

A. Well, it happened all at the same time. I can look at it, I can see a name, I can see a picture and I can see that it's fake."

¶ 6     Defendant testified that, at the time of the traffic stop, her purse contained a wallet that held cards and money. The wallet was a trifold style, with "sleeves" for identification cards and credit cards. There was one ID card in the wallet in a black sleeve. (Defendant later referred to that sleeve as a "slot.") The ID card fit in the sleeve or slot tightly enough that if the wallet were turned over, the ID card would not fall out. The only other item in the purse was a bond-slip from the Cook County jail.

¶ 7     The parties stipulated that Officer Krawczyk would testify that he smelled the odor of cannabis coming from the van's window and that the rear passenger handed him two baggies containing cannabis.

¶ 8     The trial court denied the motion to suppress. The court concluded that McKimson was entitled to search not only for cannabis but for any type of narcotic. The court further reasoned as follows:

"So he opens up the purse, assume for the moment that we accept the defendant's testimony that this card was in this slot in the wallet, I don't think that would prevent the officers from taking that out because we've had testimony that the amount of cannabis that was found was small in size, but there could be other things that he could examine.

He could be looking for a pill of some kind, that could be anywhere.

So I think he had the right to assume–I assume for the moment that this was in this enclosed area, that he had the right to search whatever is there to see if there's any other narcotics in the vehicle, which the odor of cannabis allowed him to do."

¶ 9    After defendant unsuccessfully moved to reconsider, a stipulated bench trial was conducted. The parties entered into a written stipulation that McKimson would testify consistently with his testimony at the suppression hearing. McKimson would also testify that (1) he asked defendant about the ID card (which was a purported driver's license bearing the name "Alicia D. Burge"), and she replied that her picture appeared on the license, that the license was fake, and that she obtained the license because she previously had a warrant; (2) he was trained in the identification of fraudulent driver's licenses; (3) the image of the State of Illinois was cut off on the license and the background of the photo was a darker blue than on a standard license; (4) "upon looking at the license located in the defendant's purse, he was immediately able to tell that the license was falsified"; and (5) defendant was placed under arrest.

¶ 10    According to the stipulation, Krawczyk would testify that he transported defendant to the Woodridge Police Department. Krawczyk discovered a silver magnet in the squad car. A video camera in his squad car showed defendant removing the silver magnet from near her lower back and discarding it in the prisoner compartment of the squad car. McKimson would testify that defendant was interviewed at the police station. She indicated that she used the magnet at various

stores to remove theft detection devices from clothing. Based on his training and experience, McKimson knew that the magnet was used to remove theft detection devices from merchandise at retail establishments.

¶ 11    Also according to the stipulation, Alicia D. Burge would testify that she had never met defendant and did not give defendant her driver's license or give defendant permission to use any of her identifying information. An employee of the Illinois Secretary of State's Office would testify that the license found in the purse or wallet was not a driver's license issued by the Illinois Secretary of State.

¶ 12    Before accepting the stipulation, the trial court admonished defendant according to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012), which prescribes the admonitions the trial court must give before accepting a "stipulation that the evidence is sufficient to convict." The trial court confirmed that defendant understood that "the stipulation *** is being given with the understanding that the evidence presented is sufficient to convict and that there's no defense being put forth in this case, and the stipulated procedure is being done primarily to preserve your rights of appeal on the motion[.]" The trial court later reiterated that defendant was "admitting that the evidence is sufficient to convict *** and it's being done to preserve [defendant's] rights of appeal." Defendant again confirmed that she understood. Immediately before asking for the "factual basis," the court once again inquired of defendant, "Do you understand that by entering this stipulation you're basically admitting to me that there's evidence that's sufficient to prove you guilty ***?" Defendant yet again confirmed that she understood. The trial court found defendant guilty of all the charges, and this appeal followed.

¶ 13                                II. ANALYSIS

¶ 14    Defendant first argues that the trial court erred in denying her motion to suppress evidence allegedly obtained in violation of the constitutional prohibition of unreasonable searches and seizures. See U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Before addressing the merits, we must consider whether the issue is properly before us. This appeal arises after a stipulated bench trial. However, as explained below, we conclude that the stipulated bench trial was tantamount to a guilty plea. We, therefore, consider: (1) whether defendant waived any error in the denial of her motion to suppress and (2) whether the case must be remanded for compliance with the rules governing appeals following guilty pleas.

¶ 15    Much depends on our characterization of the proceedings below because a guilty plea generally waives nonjurisdictional defenses, which includes any error in the denial of a motion to suppress. *People v. Green*, 21 Ill. App. 3d 1072, 1074 (1974). However, a defendant who desires to test a suppression ruling without proceeding to a full trial may, with the State's agreement, resolve the prosecution with a stipulated bench trial. As we noted in *People v. Gonzalez*, 313 Ill. App. 3d 607, 617 (2000), "[a] stipulated bench trial is a legal fiction created solely to give defendants the benefit and convenience of a guilty plea while avoiding the consequences of waiver or forfeiture."

¶ 16    In a stipulated bench trial, the parties stipulate to the evidence but preserve a defense for appeal. *Id.* If the parties further stipulate that the evidence is sufficient to convict, however, the stipulated bench trial will be considered tantamount to a guilty plea. *People v. Thompson*, 404 Ill. App. 3d 265, 270 (2010) ("The general rule adopted by the supreme court is that a stipulated bench trial is tantamount to a guilty plea if the defendant either: (1) stipulates that the evidence is sufficient for a finding of guilty beyond a reasonable doubt, or (2) does not present or preserve a

defense.") Here, the trial judge repeatedly confirmed that defendant was stipulating to the sufficiency of the evidence. Accordingly, the stipulated bench trial was tantamount to a guilty plea.

¶ 17    Our cases are not in harmony as to whether defenses are effectively preserved by a stipulated bench trial that is tantamount to a guilty plea. In *People v. Bond*, 257 Ill. App. 3d 746, 749 (1994), we stated that a stipulated bench trial that is tantamount to a guilty plea "does not necessarily waive [the defendant's] right to appeal every issue that is not jurisdictional." We cited *People v. Horton*, 143 Ill. 2d 11 (1991), which held that when a defendant stipulates to the sufficiency of the evidence, he or she is entitled to the admonitions Illinois Supreme Court Rule 402 (eff. July 1, 2012) requires for a defendant before entry of a guilty plea (since *Horton*, the rule was amended to require admonitions "[i]n hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict" (*id.*)). In *Horton*, the defendant had two stipulated bench trials. At the second trial, he stipulated to the sufficiency of the evidence. The *Horton* court stated that "even though defendant presented and preserved a defense in his second stipulated bench trial," the defendant should have received the admonitions given to defendants pleading guilty. *Horton*, 143 Ill. 2d at 22. In *Bond*, we understood this language to mean that stipulating to the sufficiency of the evidence does not waive preserved defenses such as an error in a ruling on a suppression motion. *Bond*, 257 Ill. App. 3d at 749 (citing *Horton*, 143 Ill. 2d at 22).

¶ 18    In contrast, in our more recent decision in *Gonzalez*, we cited *Horton* in stating that "[i]f counsel stipulates that the evidence is sufficient to convict, then the stipulated bench trial mutates into a guilty plea and the suppression issues are waived on appeal." *Gonzalez*, 331 Ill. App. 3d at 617 (citing *Horton*, 143 Ill. 2d at 22). See also *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 17 (citing *Gonzalez*, 331 Ill. App. 3d at 618) (if a stipulated bench trial becomes tantamount to a guilty

plea, "the very issue sought to be preserved is foreclosed"); *People v. Cunningham*, 286 Ill. App. 3d 346, 348-49 (1997) (citing *Horton*, 143 Ill. 2d at 22) ("If a defendant stipulates not just to the sufficiency or existence of the evidence, but to the sufficiency of the evidence to convict, then the stipulation is tantamount to a guilty plea *** and apparently there may be no consideration of the reserved issue on appeal.")

¶ 19    After careful consideration, we conclude that the *Gonzalez* court misread *Horton*. We read *Horton* to hold that preservation of a defense in a stipulated bench trial is not affected by a stipulation that the evidence is sufficient to convict. More importantly, *Horton* did *not* suggest that preserved issues are waived by a stipulation that the evidence is sufficient to convict. Therefore, we adhere to our decision in *Bond* and decline to follow our later decision in *Gonzalez*. We emphasize that here defendant was twice told that proceeding by way of a stipulated bench trial would preserve her right to appeal the ruling on the motion to suppress. As such, it would be manifestly unfair to deprive defendant of review of that issue, particularly where the State and defendant negotiated for and ultimately agreed the stipulated bench trial process. See generally *People v. Cordero*, 358 Ill. App. 3d 121, 124 (2005).

¶ 20    Courts are also split on the question of whether the Illinois Supreme Court rules governing appeals from guilty pleas are applicable when a stipulated bench trial is tantamount to a guilty plea. Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) provides that no appeal may be taken from a judgment entered upon a plea of guilty unless the defendant timely files an appropriate postplea motion. In *Bond*, we held that Rule 604(d) does not apply to stipulated bench trials that are tantamount to guilty pleas. In contrast, in *Thompson*, 404 Ill. App. 3d at 270, the Third District, in *dicta*, expanded *Horton*'s holding concerning Rule 402(a) admonitions to embrace Rule 604(d). In *People v. Smith*, 2011 IL App (4th) 100430, ¶ 13, the Fourth District followed *Thompson*. Since

*Thompson*, however, the Third District has held that Rule 604(d) does not apply to stipulated bench trials that are tantamount to guilty pleas. See *People v. Weaver*, 2013 IL App (3d) 130054, ¶ 22. The *Weaver* court reasoned that:

"[A] stipulated bench trial tantamount to a guilty plea is still a stipulated bench trial. It allows a defendant to avoid the forfeiture rule as to an issue that he or she seeks to preserve for appeal but take advantage of the benefits of a guilty plea. See *Horton*, 143 Ill.2d at 22 ***. Thus, while it may be similar to a guilty plea, it is not actually a guilty plea subject to Rule 604(d)." *Id.* ¶ 23

¶ 21    We agree with the reasoning in *Weaver*, and we choose to follow that case as well as our decision in *Bond*. We, therefore, hold that, although defendant's stipulated bench trial was tantamount to a guilty plea, she did not waive review of the ruling on her motion to suppress. We note, too, that because she also did not challenge her sentence there was no need for her to file a postplea motion to preserve her claim.

¶ 22    Turning to the merits, we first consider whether the trial court erred in denying defendant's motion to suppress evidence allegedly obtained in violation of the constitutional prohibition of unreasonable searches and seizures. The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) protect individuals from unreasonable searches and seizures. "Warrantless searches or seizures are considered unreasonable and in contravention of the federal and state constitutions unless they fall under one of a few well-defined exceptions to the general rule." *People v. Cherry*, 2020 IL App (3d) 170622, ¶ 18.

¶ 23    The following principles govern our review of the trial court's ruling on a motion to suppress:

"In reviewing the trial court's ruling on a motion to suppress, we will reverse the trial court's factual findings only if they are against the manifest weight of the evidence; however, we will review *de novo* the ultimate question of whether the evidence should have been suppressed. [Citation.]

Although a defendant initially bears the burden of proof on a motion to suppress, where a defendant makes a *prima facie* case that the evidence was obtained by an illegal search or seizure, the burden shifts to the State to go forward with evidence countering the defendant's *prima facie* case. [Citation.] A defendant presents a *prima facie* case when he demonstrates that the search was conducted without a warrant." *People v. Kowalski*, 2011 IL App (2d) 100237, ¶¶ 8-9.

The State bears the burden of presenting evidence showing that a warrantless search was justified under a recognized exception to the warrant requirement. *People v. Butler*, 2015 IL App (1st) 131870, ¶ 33.

¶ 24    Defendant does not challenge the initial traffic stop of the vehicle in which she was a passenger. It is undisputed that McKimson observed that the vehicle did not have a front license plate and that this gave McKimson a basis to stop the vehicle. Upon approaching the vehicle, Krawczyk smelled the odor of cannabis, and a passenger in the vehicle handed two small bags of cannabis to Krawczyk. At that point, the officers were entitled to conduct a warrantless search of the vehicle under the automobile exception to the warrant requirement. See *United States v. Ross*, 456 U.S. 798 (1982). "[U]nder *Ross* an officer who lawfully stops a vehicle and who has probable cause to believe that the vehicle is carrying contraband may lawfully search the vehicle and any closed containers in the vehicle that might reasonably contain the object of the search." *People v.*

*Smith*, 95 Ill. 2d 412, 418 (1983). Under *Ross*, McKimson was authorized to search defendant's purse, which qualified as a closed container.

¶ 25    Defendant recognizes that McKimson and defendant gave significantly different accounts of what defendant's purse contained. Defendant argues that, under either scenario, McKimson's search exceeded the proper scope of a warrantless automobile search. We disagree and hold that, under either scenario, the seizure of the ID card was proper.

¶ 26    McKimson testified that (1) defendant's purse was empty except for an ID card, (2) he immediately recognized that the ID card was fake, and (3) he removed the ID card from the purse. Defendant argues, however, that McKimson's observation that there were no drugs in the purse "dispelled the probable cause that authorized that search of her property." We agree. McKimson and Krawczyk had probable cause to believe that cannabis and perhaps other illicit drugs would be found in the vehicle. That probable cause did not authorize the search or seizure of other property. The scope of a warrantless search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ross,* 456 U.S. at 824. Once he determined that the purse did not contain cannabis or other drugs, McKimson exhausted his original justification for searching inside the purse. Thus, his seizure of the ID card, which was not within the scope of that search, needed some independent justification.

¶ 27    The State contends, *inter alia*, that the ID card was subject to seizure under the plain-view exception to the warrant requirement. Under the plain-view exception:

> "A police officer may properly seize evidence of a crime without a warrant if (1) the officer was lawfully in a position from which to view the object seized in plain view, (2) the object's incriminating character was immediately apparent, meaning the officer had probable cause to believe the object was contraband or evidence of a crime, and (3) the

officer had a lawful right of access to the object itself." *People v. McCavitt*, 2021 IL 125550, ¶ 111.

Here, the first and third elements of the plain-view exception were easily satisfied. McKimson was entitled to open the purse and look inside. Thus, he was lawfully in a position to view the ID card where it lay inside the purse. This leaves the second element: whether the ID card's incriminating character was immediately obvious. McKimson testified that, when he opened the purse, he saw that it was empty except for an ID card. Asked by defense counsel if he took the ID card out of the purse and looked at it, McKimson answered, "Yes." Defense counsel then asked, "And when after you had gotten it out of the purse and you looked at the ID, you read the name and looked at the picture?" McKimson responded, "Upon immediately seeing it I knew it was a fake ID." Defense counsel persisted in his line of questioning, asking McKimson, "Well, you took it out of the purse and you read it, right?" McKimson answered, "Well it happened all at the same time. I can look at it, I can see a name, I can see a picture, I can see that it's fake."

¶ 28    According to defendant, McKimson's testimony indicated that he did not recognize that the ID card was fake until he took it out of the purse. The State, stresses, however, that McKimson testified that "[u]pon immediately seeing it [he] knew it was a fake ID." That testimony indicates that McKimson was able to determine that the ID card was fake *before* removing it from the purse. Accordingly, McKimson's testimony supports application of the plain-view exception to the warrant requirement.

¶ 29    Furthermore, we note that "[a] reviewing court may use evidence presented at trial to *affirm* a trial court's denial of a motion to suppress." (Emphasis in original.) *People v. Davis*, 335 Ill. App. 3d 1, 12 (2002). For purposes of trial, it was stipulated that (1) the ID card seized was a purported driver's license; (2) McKimson was trained in the detection of fraudulent driver's

licenses; (3) the image of the State of Illinois was cut off at the corner of the license; (3) the blue background of the photo on the license was darker than the background on a standard license; and (4) "upon looking at the license *located in defendant's purse*, [McKimson] was immediately able to tell that the license was falsified." (Emphasis added.) From these stipulated facts it was reasonable to conclude that the characteristics of the ID card giving it away as a fake were immediately apparent from viewing it where it lay inside the purse.

¶ 30    We turn to defendant's account of the search. Defendant testified that the ID card was in a tight opaque sleeve in her wallet. She argues that the sleeve was not a place where cannabis or other drugs could be concealed. We disagree. We note that the trial court reasoned that the odor of cannabis and the discovery of packages of cannabis provided probable cause to search the vehicle and containers within the vehicle not just for cannabis but for "any type of narcotic." At oral argument, defendant contended that McKimson had probable cause to search only for cannabis. However, in her opening brief, defendant did not dispute that the probable cause for the vehicle search extended to cannabis and other illicit drugs. Defendant thereby forfeited any argument that the scope of the search was restricted to cannabis. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The trial court found that the sleeve could conceal a small packet of cannabis or a pill of some sort. Whether cannabis or a pill would fit in the sleeve was a question of fact for the trial court, and, as noted, we will not reverse the trial court's findings of fact unless they are against the manifest weight of the evidence. We have no cause to disturb the trial court's finding.

¶ 31    Defendant argues that there was no need to remove the ID card from the sleeve. According to defendant, McKimson could have ascertained the presence or absence of drugs by running his finger through the sleeve or moving the card aside within the sleeve. Be that as it may, we do not believe that it was unreasonable to remove the card to gain better access to the sleeve. We,

therefore, conclude that neither McKimson's testimony nor defendant's testimony establishes an unlawful search or seizure. Accordingly, the motion to suppress was properly denied.

¶ 32    Defendant alternatively argues that, if we conclude that her testimony at the suppression hearing established that McKimson had probable cause to seize the ID card, we should also conclude that trial counsel was ineffective for presenting her testimony. The argument is meritless. Claims of ineffective assistance of counsel are evaluated under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), which requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Given that we have concluded that McKimson's testimony was sufficient to establish probable cause, the outcome of the suppression hearing would have been the same had defendant refrained from testifying. Therefore, defendant suffered no prejudice.

¶ 33    Defendant next argues that her convictions of identity theft, possession of a fictitious or unlawfully altered driver's license, and forgery violate the one-act, one crime rule and that only the conviction of the most serious of those offenses may stand. "The one-act, one-crime rule prohibits convictions for multiple offenses that are based on precisely the same physical act." *People v. Smith*, 2019 IL 123901, ¶ 13. Judgment may be entered on only the most serious offense. *People v. Smith*, 233 Ill. 2d 1, 21 (2009). The State agrees that all three convictions were based on the same physical act. Possession of a fictitious or unlawfully altered driver's license is a class 4 felony (625 ILCS 5/6-301.1(b)(4), (c)(3) (West 2016)) whereas the other offenses are class 3 felonies (720 ILCS 5/17-3(a)(3), (d)(1) (West 2016) (forgery); *id.* § 16-30(a)(4), (e)(1)(B) (identity

theft)). Thus, the conviction of possession of a fictitious or unlawfully altered driver's license must be vacated.

¶ 34    Where offenses carry the same penalties (as do identity theft and forgery do here), courts consider which offense requires a more culpable mental state. Here, defendant was convicted of identity theft as defined in section 16-30(a)(4) of the Criminal Code of 2012 (Code) (720 ILCS 5/16-30(a)(4) (West 2018). Under that provision, a person commits identity theft if he or she knowingly "uses, obtains, records, possesses, sells, transfers, purchases, or manufactures any personal identifying information or personal identification document of another knowing that such personal identification information or personal identification documents were stolen or produced without lawful authority." *Id.* Defendant was charged with forgery under section 17-3(a)(3) of the Code (*id.* § 17-3(a)(3) (West 2018)) which provides:

"(a) A person commits forgery when, with intent to defraud, he or she knowingly:

* * *

(3) possesses, with intent to issue or deliver, [a false document or a document altered to make it false] knowing it to have been thus made or altere[d]."

¶ 35    Because forgery requires a more culpable mental state of intent, it is a more serious crime, and the conviction of identity theft must be vacated.

¶ 36                                III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm defendant's conviction of forgery and vacate her convictions of identity theft and possession of a fictitious or unlawfully altered driver's license.

¶ 38    Affirmed in part and vacated in part.