NOTICE
Decision filed 07/22/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220338-U

NO. 5-22-0338

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 21-CF-1692 |
| | ) | |
| JOSHUA E. BURTON, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Vaughan and Justice Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We reverse the circuit court's judgment denying defendant's motion to quash arrest and suppress evidence where the police officer unreasonably prolonged the traffic stop beyond its mission without reasonable, articulable suspicion that defendant committed, or was about to commit, a crime.

¶ 2   After the St. Clair County circuit court denied a motion to quash arrest and suppress evidence filed by defendant, Joshua E. Burton, the case proceeded to a stipulated bench trial and defendant was convicted of unlawful possession of methamphetamine with intent to deliver (720 ILCS 646/55(a)(1) (West 2020)), a Class X felony. Defendant appeals, arguing that his stipulated bench trial amounted to a negotiated guilty plea and that the circuit court failed to admonish him pursuant to Illinois Supreme Court Rules 402 (eff. July 1, 2012) and 605(c) (eff. Oct. 1, 2001). Defendant also argues that the court erred by denying his motion to quash arrest and suppress

1

evidence. We reverse the court's judgment denying defendant's motion to quash arrest and suppress evidence.

¶ 3                                                    I. Background

¶ 4       On May 2, 2021, an officer with the O'Fallon Police Department arrested defendant after a traffic stop led to the discovery of methamphetamine in a rental vehicle driven by his girlfriend, Season Schrader. Defendant was a passenger in the vehicle at the time of the traffic stop. The traffic stop was recorded on a patrol car dashboard monitor, along with the body cameras of two police officers. Thereafter, the State charged defendant by information with unlawful possession with the intent to deliver between 100 and 500 grams of methamphetamine.

¶ 5       On February 11, 2022, defendant filed a *pro se* motion to quash arrest and suppress evidence, alleging that law enforcement unreasonably prolonged the traffic stop without justification on May 2, 2021. Defendant also filed a *pro se* motion requesting that the circuit court allow him to proceed *pro se* on February 28, 2022, which the circuit court granted on March 14, 2022.

¶ 6       On April 19, 2022, the circuit court held a hearing on defendant's motion to quash arrest and suppress evidence. At the hearing, Officer Brett Johnson testified that he began watching the rental vehicle because it was parked in front of a hotel known for criminal activity. Officer Johnson noticed that the rental vehicle had "some significant, obvious damage that would normally be taken care of." Officer Johnson found the damage on the rental vehicle suspicious. Officer Johnson noted that rental vehicle damage could indicate that the vehicle had not been returned in a timely manner. Officer Johnson noted that rentals were commonly used for criminal activity because the person driving the vehicle did not want their own vehicle towed in the event of an arrest.

2

¶ 7    Officer Johnson testified that when he began following the rental vehicle, he observed defendant driving and Schrader sitting in the passenger seat. Defendant looked at Officer Johnson in the rearview mirror. Defendant pulled into a gas station, where both defendant and Schrader exited the vehicle and briefly entered the store. When they returned to the vehicle, Schrader entered the driver side and defendant entered the passenger side. Officer Johnson found it "odd" that defendant and Schrader switched seats.

¶ 8    Officer Johnson testified that he observed Schrader drive the vehicle near a house known for drug activity. Shortly thereafter, Officer Johnson observed Schrader commit two traffic infractions. He first observed her surpassing the stop line for a stop sign at an intersection. Officer Johnson then began recording with his dash camera. He next observed Schrader failing to signal within 100 feet of an intersection. When Schrader pulled into a different gas station, Officer Johnson initiated a traffic stop.

¶ 9    Officer Johnson testified that he observed "some odd behavior" between defendant and Schrader when he first made contact and obtained some basic information. Officer Johnson noted that defendant appeared calm, while Schrader appeared nervous and "very shaky." Officer Johnson later acknowledged that the behavior he observed was "somewhat normal" for a traffic stop. Officer Johnson returned to his patrol car and called for another unit. Officer Johnson learned that Schrader had a valid license with no warrants, while defendant had a revoked driver's license and was on parole. Officer Johnson could not "recall what he was on parole for." Officer Johnson explained that dispatch "had some what's called highlights, kind of basic history of his arrests." Officer Johnson agreed that he received this information approximately six minutes into the stop. Officer Johnson agreed that he had all of the information he needed to write warning tickets after he heard from dispatch, but he could not recall if he began working on the tickets at that point in

3

time. Officer Johnson testified that he could write warning tickets for the traffic infractions he observed in five to seven minutes.

¶ 10    Officer Johnson testified that he did not place defendant under arrest after learning defendant's license was revoked because he wanted to "alleviate tensions" and obtain "further cooperation." Officer Johnson testified that he intended to arrest defendant for driving on a revoked license. When asked if defendant was free to leave at that point, Officer Johnson responded, "He was not."

¶ 11    Officer Johnson testified that after "Officer Luttrell"[1] arrived on the scene, Officer Johnson made an unsuccessful attempt to contact the rental company that owned the vehicle "to determine who was the legal driver of the vehicle or the agreed upon driver." Defendant advised that "another female had rented [the vehicle] to him," but defendant could not provide the rental agreement. Officer Johnson did not know if Schrader or defendant were authorized drivers of the vehicle, but he acknowledged that it was not a crime for an unauthorized driver to drive a rental vehicle in Illinois. Officer Johnson also acknowledged that he ran the vehicle's registration through dispatch and "[i]t came back clear." Officer Johnson returned to his vehicle and requested a canine sniff for the rental vehicle; however, the nearest available canine unit was located in Caseyville, Illinois.

¶ 12    Officer Johnson testified that he next asked Schrader to step out of the vehicle for questioning. When Officer Johnson asked her where they were going, she replied that she did not know. Officer Johnson did not recall Schrader advising that they were traveling to defendant's brother's home. When Officer Johnson asked her how she knew defendant, she paused for a brief period before stating that the two were dating. Schrader advised that she worked for defendant.

---

[1]Officer Luttrell's full name is not contained in the record on appeal.

4

When Officer Johnson asked if there was anything illegal in the vehicle, Schrader looked into the vehicle and responded in the negative.

¶ 13    Officer Johnson testified that he asked defendant the same questions he asked Schrader. Defendant advised that he was in town looking for work. Defendant's response seemed odd to Officer Johnson because it was unclear how Schrader could work for defendant if he did not have job. Defendant also advised that they were on their way to "Troy" to see his brother. Defendant denied that there was anything illegal in the vehicle. Officer Johnson asked defendant to step out of the vehicle before the canine unit arrived.

¶ 14    When asked why he began questioning Schrader and defendant, Officer Johnson responded that he believed Schrader and defendant "had some sort of criminal element to [their] vehicle." Officer Johnson believed Schrader and defendant "were trying to avoid [him] due to [his] presence and [their] reaction to [his] presence, and [he] believed there was some sort of contraband within [their] vehicle." When asked what specific facts led him to believe defendant and Schrader were carrying contraband, Officer Johnson responded, "It's kind of a totality of everything. It's—not only is it your driving behavior and your reaction to seeing me initially and what you did at the gas stations and pulling into the neighborhoods, but also your body language." Officer Johnson also noted that Schrader and defendant's "stories were off on certain aspects."

¶ 15    When asked why he waited 17 minutes to call the canine unit, Officer Johnson responded that it was not "a normal traffic stop." Officer Johnson testified that he was "building [his] reasonable suspicion." Officer Johnson believed he had built enough reasonable suspicion to call a canine unit 17 minutes into the stop. Officer Johnson clarified that he was investigating contraband at that point in the stop. However, he wrote Schrader traffic tickets and was explaining

5

the tickets to Schrader when the canine unit arrived. Officer Johnson denied that he stalled in writing Schrader tickets.

¶ 16    Officer Johnson testified that when the canine unit arrived, the dog immediately alerted to the front passenger door of the rental vehicle. Officer Johnson searched that area of the vehicle and recovered a bag of suspected methamphetamine. Thereafter, Officer Johnson placed defendant under arrest. Defendant stated that the methamphetamine belonged to him. Officer Johnson estimated that 20 to 25 minutes elapsed from the time he stopped the vehicle to the time he searched the vehicle.

¶ 17    Defendant next testified at the hearing. Defendant agreed that Schrader committed traffic infractions, but he believed that Officer Johnson "exceeded the scope of the stop." According to defendant, Officer Johnson "should have been working on the traffic tickets." Defendant noted that the traffic stop began at approximately 2:08 p.m. and that Schrader was "cleared" by dispatch at approximately 2:15 p.m. After Schrader was cleared, Officer Johnson attempted to contact the rental company to check the status of the rental vehicle for seven to eight minutes. Defendant believed that Officer Johnson turned the investigation to drugs when he was unable to contact the rental company. Defendant claimed that he and Schrader provided the same responses to Officer Johnson's questions. Defendant noted that Officer Johnson called the canine unit at 2:25 p.m.— 17 minutes after he initiated the traffic stop. The canine unit arrived and alerted at 2:41 p.m. or 2:42 p.m.—33 or 34 minutes after Officer Johnson initiated the stop. According to defendant, Officer Johnson advised that he was not arresting defendant for driving on a revoked license.

¶ 18    Defendant also submitted, and the circuit court admitted into evidence, the dash camera footage from Officer Johnson's patrol car, as well as the body camera footage from both Officers Johnson and Luttrell. The footage confirmed that the traffic stop lasted approximately 34 minutes.

6

The video footage also confirmed the following: the traffic stop commenced at approximately 2:08 p.m.; dispatch advised Officer Johnson of the status of Schrader and defendant's driver's licenses at approximately 2:15 p.m.; Officer Johnson began attempts to contact the rental company at 2:15 p.m.; Officer Johnson ceased his efforts to contact the rental company at 2:24 p.m.; Officer Johnson called for a canine unit at 2:25 p.m.; Officer Johnson asked Schrader to get out of the vehicle and began questioning her at 2:26 p.m.; Officer Johnson asked defendant to get out of the vehicle and began questioning him at 2:29 p.m.; Officer Johnson indicated that he was not going to write defendant a ticket for driving with a revoked license; both defendant and Schrader advised Officer Johnson that they were traveling to defendant's brother's home; defendant stepped out of the vehicle and Officer Johnson frisked defendant at 2:32 p.m.; Officer Johnson began writing Schrader warning tickets at 2:35 p.m.; Officer Johnson completed the warning tickets at approximately 2:38 p.m.; Officer Johnson explained the tickets to Schrader at 2:39 p.m.; the canine unit arrived at 2:41 p.m.; and the dog alerted on the vehicle at 2:42 p.m.

¶ 19    After presenting evidence, defendant argued that Officer Johnson abandoned the scope of the traffic stop when he called the rental company and called for a canine unit. Defendant asserted that Officer Johnson prolonged the mission of the traffic stop without reasonable suspicion for a drug investigation. Defendant, relying on *Rodriguez v. United States*, 575 U.S. 348, 354 (2015), asserted that the prolonged stop became an illegal seizure and that the circuit court should suppress the resulting evidence.

¶ 20    The State argued that Officer Johnson intended to arrest defendant for driving on a revoked license but did not do so immediately to gain defendant's cooperation in further investigation. The circuit court interjected and stated, "But watching the video, I get an impression that the officer had not decided to charge him." The court also noted that defendant was not ultimately charged

7

with driving with a revoked license. The State responded, "All I can go by is what the officer told me prior to the hearing and what he testified to on the stand, Judge." The State argued that this was "a search incident to arrest" not a prolonged stop. The court agreed that "a search incident to arrest is almost unimpeachable" but noted that it appeared to be "a search after a canine hit," not a search incident to arrest. The State also argued that Officer Johnson had reasonable suspicion to prolong the traffic stop, where the rental vehicle had damage, the vehicle was in "a high drug area," the inconsistent stories between defendant and Schrader, and Officer Johnson's knowledge of defendant's prior drug convictions.[2] Following the hearing, the circuit court took the matter under advisement.

¶ 21    On April 25, 2022, the circuit court entered an order denying defendant's motion to quash arrest and suppress evidence. The court found the following facts supported Officer Johnson's detention of defendant for the arrival of a canine unit to conduct "an open-air sniff" of the vehicle defendant occupied: law enforcement observed defendant driving the rental vehicle when his driving privileges were suspended or revoked and he switched positions with Schrader under circumstances that suggested he was aware of police presence; the vehicle was a rental car with incomplete or non-existent documentation to show that defendant had the right to possess the vehicle; and the vehicle had exterior damage indicating to Officer Johnson that the vehicle was in defendant's possession for a lengthy period of time.

¶ 22    On May 5, 2022, defendant filed a *pro se* motion to reconsider the circuit court's order denying the motion to suppress. Defendant urged the court to review the dash and body camera footage.

---

[2]Officer Johnson did not specifically testify that he considered defendant's prior drug convictions in forming his reasonable suspicion to prolong the stop for a drug investigation.

¶ 23    On May 11, 2022, the circuit court held a hearing on defendant's motion to reconsider and took the matter under advisement. At a hearing held on May 19, 2022, the court denied the motion to reconsider. After denying the motion, the court stated, "So I'd like to know if we're going to set the case for trial; if so, when, if you need more time to think about it." Defendant, proceeding *pro se*, expressed a desire to meet with the State. The court scheduled a meeting between defendant and the State. Defendant then stated that he would "like to get it wrapped up as soon as possible. If we can come to an agreement, could we do a stipulated bench trial that day or how does that work?" The court directed defendant to discuss the matter with the State and asked if defendant wanted to preserve his right to appeal. Defendant responded, "Yes."

¶ 24    On May 23, 2022, the circuit court held a hearing. The court inquired about the status of the "plea negotiations." The State responded, "The agreement is that [defendant] will be sentenced to 12 years in the Illinois Department of Corrections on the charge as filed. But instead of doing a plea, he is requesting and the State is agreeing to do a stipulated bench trial on the matter." The following colloquy then took place between the court and *pro se* defendant:

> "THE COURT: In other words, [defendant], [the State] will give a factual basis. And if this goes through, you're stipulating that if the evidence was presented that it would be sufficient to find you guilty beyond a reasonable doubt.
>
> DEFENDANT BURTON: Yes.
>
> THE COURT: And you preserve your right to appeal the Court's ruling on the 4th Amendment issue.
>
> DEFENDANT BURTON: Yes."

¶ 25    The circuit court then advised defendant that he was charged with unlawful possession with intent to deliver methamphetamine, a nonprobationable Class X felony that carried a sentencing

range of 6 to 40 years in prison followed by 3 years of mandatory supervised release. Defendant indicated that he understood. The court next advised defendant that he did not "have to plead guilty" and that he had "a right to a trial." The court advised that "the State would have the burden of calling witnesses to testify" and defendant would have the right to cross-examine the State's witnesses. The court further advised that defendant had the right to call witnesses and to testify on his own behalf. When the court asked if defendant had any questions about his "trial rights," defendant responded, "No, sir." The court then stated, "And if you stipulate at this bench trial that the State has sufficient facts to convict you of this offense beyond a reasonable doubt, then there's not going to be a trial." Defendant indicated that he understood. When the court asked if anyone forced defendant to proceed by way of stipulated bench trial, defendant responded, "No, sir." When the court asked if defendant felt "that the stipulated bench trial and the admission by [him] that the State ha[d] sufficient evidence [was] the best way to proceed," defendant responded, "I do, sir."

¶ 26     The State then presented a factual basis, which included facts similar to those presented at the hearing on defendant's motion to suppress. The State indicated that its evidence would include the dash and body camera video footage. The State and defendant stipulated that the time between the traffic stop and the search was approximately 30 minutes. The following colloquy then took place between the circuit court and defendant:

> "THE COURT: All right. The record at the motion hearing is also—will be part of the record also. So that's there. And you preserved your 4th Amendment argument—
>
> DEFENDANT BURTON: Okay.
>
> THE COURT: —in that regard—
>
> DEFENDANT BURTON: Then I'm fine with stipulating that.

10

THE COURT: —and by this proceeding. So, sir, now, with that clarification, you are stipulating that if this was presented to a trier of fact that there would be a finding of guilty?

DEFENDANT BURTON: Yes, Your Honor.

THE COURT: All right. Very well. And you're preserving your right to appeal the 4th Amendment issue.

DEFENDANT BURTON: Yes, Your Honor.

THE COURT: Very well. Based upon that, I will accept the stipulation and [defendant's] agreement with the fact that the State could provide a burden of proof beyond a reasonable doubt on the charge as alleged in the Criminal Information and based upon that make a finding of guilty to the Class X felony of possession with intent to deliver methamphetamine."

¶ 27    Defendant waived his right to a presentence investigation, and the circuit court sentenced him to 12 years in prison in accordance with the parties' agreement. The court advised defendant that he had 30 days to file his notice of appeal. The court further stated, "So don't lose track of that. That's the whole reason we did the stipulated bench trial was for you to proceed with that." The court advised that counsel would be appointed for defendant after he filed a notice of appeal. Defendant asked for assistance in filing the notice of appeal and defendant was provided a notice of appeal form. Defendant stated that he had no additional questions.

¶ 28    On May 31, 2022, defendant filed a *pro se* motion for new trial, arguing that the circuit court erred by denying his motion to quash arrest and suppress evidence. The court denied the motion on June 1, 2022, and again admonished defendant of his appeal rights.

¶ 29    Defendant filed a timely notice of appeal and the Office of the State Appellate Defender was appointed to represent him on appeal.

¶ 30                                    II. Analysis

¶ 31    On appeal, defendant raises two issues. First, he argues that his stipulated bench trial was tantamount to a guilty plea, and that the circuit court failed to substantially comply with Illinois Supreme Court Rules 402 and 605. Second, defendant argues that the court erred by denying his motion to quash arrest and suppress evidence. We address his arguments in turn.

¶ 32    We first consider whether defendant's stipulated bench trial was tantamount to a guilty plea. "The question of whether a defendant's stipulated bench trial is tantamount to a guilty plea is a question of law subject to *de novo* review." *People v. Weaver*, 2013 IL App (3d) 130054, ¶ 17 (citing *People v. Horton*, 143 Ill. 2d 11 (1991)). Generally, "[a] guilty plea forfeits all nonjurisdictional defenses or defects." *Id.* (citing *Horton*, 143 Ill. 2d at 22); see also *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 19. "On the other hand, a stipulated bench trial allows a defendant to avoid the forfeiture rule as to an issue the defendant seeks to raise on appeal, while still allowing the defendant to enjoy the advantages of a guilty plea." *Weaver*, 2013 IL App (3d) 130054, ¶ 17 (citing *People v. Thompson*, 404 Ill. App. 3d 265 (2010)).

¶ 33    Our supreme court has held that "a stipulation is tantamount to a guilty plea when one of two conditions is met: (1) the State presents its entire case by stipulation *and* defendant fails to preserve a defense; *or* (2) the stipulation concedes that the evidence is sufficient to support a guilty verdict." (Emphases in original.) *People v. Clendenin*, 238 Ill. 2d 302, 324 (2010). In other words, "[i]f the stipulation includes a statement that the evidence is sufficient to convict the defendant, it is tantamount to a guilty plea regardless of whether a defense was presented or preserved." *Mueller*, 2013 IL App (5th) 120566, ¶ 13.

12

¶ 34    Here, the State concedes, and the record confirms, that the parties stipulated that the evidence was sufficient to convict defendant. Despite stating multiple times that the purpose of the stipulated bench trial was to preserve review of defendant's fourth amendment issue, the court stated that defendant was "stipulating that if the evidence was presented that it would be sufficient to find [him] guilty beyond a reasonable doubt." The court also stated, "And if you stipulate at this bench trial that the State has sufficient facts to convict you of this offense beyond a reasonable doubt, then there's not going to be a trial." When the court asked if defendant felt "that the stipulated bench trial and the admission by [him] that the State ha[d] sufficient evidence [was] the best way to proceed," defendant responded, "I do, sir." The court also asked defendant if he was "stipulating that if this [evidence] was presented to a trier of fact that there would be a finding of guilty," and defendant responded in the affirmative. Accordingly, throughout the hearing, the court stated, and defendant agreed, that the evidence was sufficient to convict him. Under these circumstances, and the current state of legal precedent, we agree that defendant's stipulated bench trial was tantamount to a guilty plea. See *id.* ¶ 18 (holding that the defendant's stipulation that the evidence was sufficient to convict him was tantamount to a guilty plea despite the circuit court's acknowledgment that the purpose of the proceeding was to preserve the defendant's right to appeal certain issues).

¶ 35    We acknowledge that in *Mueller* this court concluded that a defendant waives all nonjurisdictional issues when he pleads guilty. *Id.* ¶ 19. In *Mueller*, this court found that the defendant's stipulated bench trial was tantamount to a guilty plea and declined to address the defendant's independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Id.* ¶¶ 18, 19. This court, citing *People v. Gonzalez*, 313 Ill. App. 3d 607, 618 (2000), noted that if the wrong language was used in a stipulated bench trial and

13

the trial became tantamount to a guilty plea, "the very issue sought to be preserved is foreclosed." *Mueller*, 2013 IL App (5th) 120566, ¶ 17.

¶ 36    Under the circumstances of the present case, we do not find the reasoning of *Mueller* applicable. We, instead, follow the Second District's more recent decision in *People v. Villarreal*, 2022 IL App (2d) 200077. In *Villarreal*, the Second District acknowledged its prior decision in *Gonzalez*, in which it interpreted *Horton* and stated that " '[i]f counsel stipulates that the evidence is sufficient to convict, then the stipulated bench trial mutates into a guilty plea and the suppression issues are waived on appeal.' " *Id.* ¶ 17 (quoting *Gonzalez*, 313 Ill. App. 3d at 617). The Second District concluded that the *Gonzalez* court misread *Horton* and, instead, "read *Horton* to hold that preservation of a defense in a stipulated bench trial is not affected by a stipulation that the evidence is sufficient to convict." *Id.* ¶ 18. Accordingly, the Second District declined to follow its own decision in *Gonzalez*—a case this court relied on in *Mueller*. In doing so, the Second District reasoned as follows:

> "We emphasize that here defendant was twice told that proceeding with a stipulated bench trial would preserve her right to appeal the ruling on the motion to suppress. As such, it would be manifestly unfair to deprive defendant of review of that issue, particularly where the State and defendant negotiated for and ultimately agreed to the stipulated bench trial process." *Id.* (citing *People v. Cordero*, 358 Ill. App. 3d 121, 124 (2005)).

¶ 37    Similarly, here, the circuit court repeatedly advised defendant, who was proceeding *pro se*, that proceeding by way of a stipulated bench trial would preserve his right to appeal the court's denial of his motion to quash arrest and suppress evidence. At the hearing, the court confirmed that defendant wanted to proceed by way of stipulated bench trial and that defendant would "preserve [his] right to appeal the Court's ruling on the 4th Amendment issue." Later at the hearing,

14

the court again told defendant that he "preserved [his] 4th Amendment argument" by proceeding by way of a stipulated bench trial. Before accepting the stipulation, the court again stated, "And you're preserving your right to appeal the 4th Amendment issue." On each occasion, defendant confirmed his understanding that he was proceeding in such a manner to preserve his right to appeal the fourth amendment issue. Under these circumstances, we decline to follow *Mueller* and find that it would be manifestly unfair to deprive defendant of review of the fourth amendment issue.

¶ 38    Before we address the fourth amendment issue, we consider defendant's argument that the circuit court failed to comply with the requirements of Rules 402 and 605. We reject defendant's contention that the court failed to substantially comply with Rule 402. Rule 402 requires certain admonitions "[i]n hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict" (Ill. S. Ct. R. 402 (eff. July 1, 2012)). In such cases, the circuit court is required to address the defendant personally in open court and inform him or her of and determine his or her understanding of the following: (1) the nature of the charge; (2) the minimum and maximum sentence prescribed by law; (3) that the defendant has the right to plead not guilty, to persist in that plea if it has already been made, or to plead guilty; and (4) that if he or she pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted by witnesses against him or her; or that by stipulating the evidence is sufficient to convict, he or she waives the right to a trial by jury and the right to be confronted with any witnesses against him or who have not testified.

¶ 39    Here, defendant concedes that the circuit court complied with Rule 402 "in some ways." Notably, defendant does not argue that the court failed to admonish him of the nature of the charge or the minimum and maximum sentence. Defendant acknowledges that the circuit court advised

defendant that he had "a right to a trial" and the right to plead not guilty. However, defendant claims that the court failed to specify that he was giving up his right to a jury trial, and that he had the right to plead not guilty and to continue pleading not guilty throughout the proceedings.

¶ 40 We find the circuit court's statement that defendant had "a right to a trial" sufficient to comply with the Rule. We do not find defendant's claim that he "may not have known he had a right to a jury trial" persuasive. At the hearing on May 11, 2022, the court asked defendant if the matter needed to be set for trial. Defendant expressed a desire to talk with the State and proceed by way of a stipulated bench trial. At the hearing on May 23, 2022, defendant clearly stated his intention to proceed by way of a stipulated bench trial to preserve his right to appeal the fourth amendment issue. When asked if he had any questions about his "trial rights," defendant responded, "No, sir." The court then stated that if defendant proceeded by way of a stipulated bench trial, there would not be a trial. Defendant indicated that he understood.

¶ 41 The court further advised defendant that he had the right to plead not guilty. The court also advised that the State had the burden of calling witnesses to testify at trial and that defendant would have the right to cross-examine each witness. The court advised that defendant had the right to call witnesses and the right to testify in his own defense. The court clarified that the State had the burden of proving defendant guilty beyond a reasonable doubt. The court then stated that if defendant proceeded by way of a stipulated bench trial, there would not be a trial. Defendant indicated that he understood. In our view, the court substantially complied with the requirements that the court confirm defendant's understanding that he had the right to a jury trial and that he had the right to plead not guilty or to persist in a not guilty plea. Thus, we reject defendant's assertion that the circuit court failed to substantially comply with Rule 402.

16

¶ 42    We also reject defendant's assertion that this court must remand the matter back to the circuit court for compliance with Rule 605(c). Rule 605(c) requires that the circuit court, in all cases in which a judgment is entered on a negotiated guilty plea, advise the defendant of the following: (1) that the defendant has the right to appeal; (2) that prior to taking an appeal, the defendant must file a written motion to vacate the judgment and for leave to withdraw the guilty plea within 30 days of the date on which the sentence was imposed; (3) that if the motion is allowed, the guilty plea, sentence, and judgment will be vacated and a trial date will be set on the charges; (4) that the State may request to reinstate any charges that were dismissed as part of the plea agreement; (5) that if defendant is indigent, a copy of the transcript of the proceedings at the time of the defendant's plea of guilty and sentence will be provided without cost to the defendant and counsel will be appointed to assist the defendant in preparing the motions; and (6) that in any appeal taken from the judgment on the plea of guilty any issue or claim of error not raised in the motion to vacate the judgment and to withdraw guilty plea shall be deemed waived.

¶ 43    We find the Third District's decision in *Weaver*, 2013 IL App (3d) 130054, instructive. In *Weaver*, the Third District considered whether a defendant whose stipulated bench trial was tantamount to a guilty plea was required to file a motion to withdraw his guilty plea before filing his appeal pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). 2013 IL App (3d) 130054, ¶ 16. The Third District acknowledged that Rule 604(d) required "that before a defendant may appeal from a guilty plea, he must file a motion in the trial court to withdraw his guilty plea and vacate the judgment within 30 days of the date sentence is imposed." *Id.* ¶ 20. The Third District noted that "[a]ny issue not raised in the motion to withdraw the plea is deemed forfeited," that "[c]ompliance with Rule 604(d) is a condition precedent to an appeal," and that the appellate court must dismiss the appeal if a defendant fails to meet this requirement. *Id.* (citing Ill. S. Ct. R.

17

604(d); *People v. Flowers*, 208 Ill. 2d 291 (2003)). The Third District concluded that "categorizing the proceeding as a stipulated bench trial 'tantamount to a guilty plea' for purposes of Rule 402" did not render the defendant's guilty plea subject to Rule 604(d). *Id.* ¶ 22.

¶ 44 In support, the Third District noted that Rule 402 contained express language pertaining to a stipulation of guilt, making that rule applicable to stipulated bench trials that were tantamount to guilty pleas. *Id.* ¶ 23. The Third District noted, however, that:

"[A] stipulated bench trial tantamount to a guilty plea is still a stipulated bench trial. It allows a defendant to avoid the forfeiture rule as to an issue that he or she seeks to preserve for appeal but take advantage of the benefits of a guilty plea. [Citation.] Thus, while it may be similar to a guilty plea, it is not actually a guilty plea subject to Rule 604(d)." *Id.*

¶ 45 As noted, here, the parties and the circuit court clearly intended to proceed by way of a stipulated bench trial. The court substantially complied with the requirements of Rule 402, which apply to stipulated bench trials. As the Third District noted in *Weaver*, "a stipulated bench trial tantamount to a guilty plea is still a stipulated bench trial." As a result, it is our view that the court was not required to comply with the requirements of Rule 605(c), which apply to negotiated guilty pleas. Moreover, defendant was not prejudiced by the court's failure to comply with Rule 605(c), where this court has concluded that he has not forfeited review of the fourth amendment issue. Thus, we reject defendant's assertion that this court must remand the matter back to the court for compliance with Rule 605(c).

¶ 46 We now turn to defendant's argument that the circuit court erred by denying his motion to quash arrest and suppress evidence. This court reviews a circuit court's ruling on a motion to suppress evidence under a two-part standard of review. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). The circuit court's findings of fact are entitled to deference and will be reversed only if

18

they are against the manifest weight of the evidence. *Id.* However, the circuit court's ultimate ruling as to whether suppression is warranted is reviewed *de novo*. *Id.*

¶ 47 The purpose of the fourth amendment of the United States Constitution (U.S. Const., amend. IV) and article I, section 6 of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) is to protect individuals against unreasonable searches and seizures. Evidence obtained in violation of the fourth amendment is subject to suppression under the " 'fruit of the poisonous tree' " doctrine. *People v. Thomas*, 2018 IL App (4th) 170440, ¶ 66 (quoting *People v. Ferris*, 2014 IL App (4th) 130657, ¶ 66). A traffic stop is a seizure of an individual, and if the seizure violates the fourth amendment, any evidence obtained by exploiting that violation is suppressible. *Id.*

¶ 48 "When a police officer sees a driver commit a traffic violation, the fourth amendment allows the officer to briefly detain the driver to investigate the violation." *Id.* ¶ 67 (citing *People v. Ramsey*, 362 Ill. App. 3d 610, 614 (2005)). Here, defendant conceded that Schrader committed two traffic infractions and that Officer Johnson had probable cause to initiate a traffic stop. Thus, the initial traffic stop was a reasonable seizure.

¶ 49 "Although a police officer may stop and briefly detain a motorist when the officer has seen the motorist commit a traffic offense, the traffic stop can become an unreasonable seizure 'if it is prolonged beyond the time reasonably required to satisfy its initial purpose.' " *Id.* ¶ 68 (quoting *People v. Heritsch*, 2017 IL App (2d) 151157, ¶ 9). Because there is no bright-line rule setting for the appropriate length of a traffic stop, courts "employ a contextual, totality of the circumstances analysis that includes consideration of the brevity of the stop and whether the police acted diligently during the stop." *People v. Baldwin*, 388 Ill. App. 3d 1028, 1034 (2009).

¶ 50 " '[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop.' " *Thomas*, 2018

IL App (4th) 170440, ¶ 68 (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). " 'Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.' " *Id.* (quoting *Rodriguez*, 575 U.S. at 354). In addition to determining whether to issue a traffic citation, an officer's mission includes ordinary questions incident to the traffic stop, including checking the driver's license, determining whether there are outstanding warrants, and inspecting the vehicle's registration and proof of insurance. *Rodriguez*, 575 U.S. at 355. Such checks ensure that vehicles on the road are operated safely and responsibly. *Id.*

¶ 51    While the fourth amendment tolerates certain unrelated investigations that do not lengthen the roadside detention, a traffic stop may " 'become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id.* at 354-55 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). There must be evidence that, but for the activities unrelated to the mission of the stop, such as a dog sniff, the officer would have finished writing the defendant's traffic citation before drugs were detected in the defendant's vehicle. *Heritsch*, 2017 IL App (2d) 151157, ¶ 16 (citing *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 32).

¶ 52    Here, as an initial matter, we note the circuit court found, and the body camera footage confirms, that Officer Johnson repeatedly indicated to defendant that he would not issue a citation to defendant for driving with a revoked license. Moreover, Officer Johnson did not issue a citation to defendant for driving with a revoked license and the State never charged defendant with this offense. Accordingly, we agree with the circuit court that the evidence in this case indicated that the issue was whether there was a prolonged traffic stop, not a search incident to arrest.

¶ 53    Moreover, Officer Johnson did not act diligently in writing tickets for the traffic infractions he observed Schrader commit. Officer Johnson testified that it would have taken him five to seven

20

minutes to write tickets for the traffic infractions he observed. The dash camera footage indicates that dispatch advised Officer Johnson of the status of Schrader and defendant's driver's licenses at approximately 2:15 p.m.—approximately seven minutes after he initiated the traffic stop. Officer Johnson did not begin writing the warning tickets at that time. He instead made unsuccessful attempts to contact the rental company. The dash camera footage confirms that Officer Johnson searched for the rental company's phone number until approximately 2:19 p.m. Officer Johnson then asked defendant for the rental agreement, but defendant was unable to provide the agreement. Officer Johnson called the rental company at 2:21 p.m. but ceased his efforts at 2:24 p.m. Officer Johnson called for a canine unit at approximately 2:25 p.m.—17 minutes after he initiated the traffic stop.

¶ 54    Officer Johnson then began questioning defendant and Schrader. It does not appear that Officer Johnson began writing the warning tickets until Officer Luttrell suggested that he do so at approximately 2:35 p.m.—27 minutes into the stop. Officer Johnson gave Schrader the warning tickets at approximately 2:38 p.m.—30 minutes into the stop. In our view, Officer Johnson should have begun writing the warning tickets at 2:24 p.m., after he was unable to contact the rental company. The body camera footage demonstrates that it took Officer Johnson three minutes to write Schrader's tickets; thus, he should have completed the mission of the traffic stop at approximately 2:27 p.m. See *People v. Sadeq*, 2018 IL App (4th) 160105, ¶ 69 ("When deciding whether a traffic stop is impermissibly prolonged, the focus of the inquiry is on 'when tasks tied to the traffic infraction are—or reasonably should have been—completed.' " (quoting *Rodriguez*, 575 U.S. at 354)); see also *People v. Koutsakis*, 272 Ill. App. 3d 159, 164 (1995) (affirming the circuit court's determination that "a stop of 14, 18 or 20 minutes was too long to write a warning

21

ticket for a minor speeding offense"). Under these circumstances, we find that Officer Johnson unreasonably prolonged the traffic stop.

¶ 55    Having found that Officer Johnson unreasonably prolonged the traffic stop, we must next consider whether Officer Johnson's conduct in prolonging the stop was justified under the fourth amendment. If an officer discovers specific, articulable facts that give rise to reasonable suspicion that a defendant has committed, or is about to commit a crime, the officer may broaden the traffic stop into an investigative detention. *People v. Ruffin*, 315 Ill. App. 3d 744, 748 (2000) (citing *People v. Stewart*, 242 Ill. App. 3d 599 (1993); *People v. Hardy*, 142 Ill. App. 3d 108 (1986)). However, "[m]ere hunches and unparticularized suspicions are not enough to justify a broadening of the stop into an investigatory detention." *Id.* (citing *People v. Penny*, 188 Ill. App. 3d 499 (1989)). Reasonable suspicion is an objective standard that requires consideration of the totality of the circumstances. *People v. Timmsen*, 2016 IL 118181, ¶ 9.

¶ 56    Here, the evidence did not support a determination that Officer Johnson had objective reasonable articulable suspicion of criminal activity to further detain defendant and Schrader. We initially note that at the motion hearing, Officer Johnson did not testify that he considered defendant's prior drug convictions in forming his reasonable suspicion. Instead, Officer Johnson testified that it was "kind of a totality of everything," which caused him to suspect there were drugs in vehicle. Officer Johnson based his suspicions on defendant's "driving behavior," defendant's "reaction to seeing [him] initially," the fact that the vehicle pulled in and out of several gas stations and neighborhoods, the fact that defendant and Schrader switched seats, and the body language of Schrader and defendant. Officer Johnson further noted that the vehicle came from an area Officer Johnson knew to be a high crime area for drug trafficking. In our view, however, this behavior

22

alone was insufficient to demonstrate that Officer Johnson had reasonable suspicion to prolong the traffic stop.

¶ 57 Officer Johnson also noted that Schrader and defendant's "stories were off on certain aspects." However, the body camera footage indicates that Schrader and defendant provided very similar stories to Officer Johnson. In addition, we note that much of the information Officer Johnson gathered occurred during his questioning of defendant and Schrader after he unreasonably prolonged the traffic stop. It is well settled that information learned after the officer unreasonably prolonged the traffic stop cannot be considered in determining whether reasonable suspicion existed to prolong the traffic stop. *Sadeq*, 2018 IL App (4th) 160105, ¶ 87.

¶ 58 Officer Johnson also testified that Schrader appeared nervous, although he later acknowledged that the behavior he observed was "somewhat normal" for a traffic stop. We also note that the body camera footage fails to corroborate Officer Johnson's testimony that Schrader appeared nervous and "shaky."

¶ 59 Officer Johnson also observed that the vehicle was a rental car that had damage, which could indicate that the vehicle was stolen or kept past the agreed upon term. Officer Johnson noted that defendant was unable to provide the rental agreement for the vehicle. Officer Johnson also noted that rental cars are often used in criminal activity to avoid having the criminal's personal car impounded. However, Officer Johnson was unable to contact the rental company. Officer Johnson also acknowledged that he ran the vehicle's registration through dispatch and "[i]t came back clear," and that it was not a crime for an unauthorized driver to drive a rental vehicle in Illinois. Moreover, Officer Johnson's observation that rental vehicles are commonly used in criminal activity, standing alone, was insufficient to give rise to reasonable suspicion of criminal activity in this case.

¶ 60    We conclude that the information Officer Johnson possessed prior to unreasonably prolonging the traffic stop did not give rise to reasonable suspicion. See *People v. Moses*, 2023 IL App (5th) 210115-U, ¶¶ 39, 43 (finding that the officer unreasonably prolonged the traffic stop of a rental vehicle without a reasonable suspicion of criminal wrongdoing where the officer testified that he had reasonable suspicion based on the following: the defendant changing lanes and slowing down upon seeing the officer; traffic violations; the defendant's statement that he had a prior arrest for drug charges; the defendant's repeated response of "no" when asked if drugs were in the vehicle; the defendant's increased nervousness when asked about cocaine; and the defendant's explanation as to why he was carrying $4000); *Ruffin*, 315 Ill. App. 3d at 750 (finding that the officer lacked reasonable suspicion based on the defendant's act of driving a rental car, the defendant's nervousness, the fact that the defendant was traveling from California to New York after visiting Mexico, and inconsistent statements between the defendant and his fiancée about who had traveled with them); *Baldwin*, 388 Ill. App. 3d at 1035 (finding that the officer lacked reasonable suspicion based on the defendant's nervousness, heavy breathing, hand placement, a faint odor of alcohol, and the defendant's act of looking in the direction of the officer and the driver); *Thomas*, 2018 IL App (4th) 170440, ¶¶ 77-93 (holding that the officer lacked reasonable suspicion based on the defendant's excessive nervousness, driving two miles under the speed limit, the defendant's act of taking an unusual route from Washington to Alabama, the defendant's decision to "drive straight through" rather than stopping, evidence of "hard travel," the defendant's decision to drive rather than fly, the lack of luggage, and the defendant's criminal history for drug trafficking). In our view, the cases cited above provided even more circumstances that would give rise to reasonable suspicion than the circumstances of the present case.

24

¶ 61    We acknowledge that Officer Johnson's hunch in this case was ultimately correct, where he discovered a large amount of methamphetamine in the rental vehicle. We appreciate Officer Johnson's desire to ensure the safety of the community by removing dangerous drugs from our streets, but we cannot overlook or condone disregard of the fourth amendment's protections against unreasonable searches and seizures of any citizen, innocent or guilty alike. Because defendant's fourth amendment rights were violated by the prolonged traffic stop, we conclude that the circuit court erred by denying his motion to quash arrest and suppress evidence.

¶ 62                              III. Conclusion

¶ 63    For the reasons stated, we reverse the circuit court's judgment denying defendant's motion to quash arrest and suppress evidence. Because the State would not have been able to prove beyond a reasonable doubt that defendant unlawfully possessed methamphetamine without the suppressed evidence, we vacate defendant's conviction and sentence. See *People v. Clark*, 394 Ill. App. 3d 344, 349-50 (2009).

¶ 64    Reversed.